UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT KOETJE,

        Plaintiff,                         Hon. Ellen S. Carmody

v.

                                           Case No. 1:14-cv-936

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On November 26, 2014, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #9).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

1

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords

to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 28 years of age on his alleged disability onset date.  (Tr. 130).  He successfully completed high school and worked previously as a roofer, framer/rough carpenter, hunting guide, building maintenance man for an ice rink, and general handyman. (Tr. 20).  Plaintiff applied for benefits on October 5, 2011, alleging that he had been disabled since July 15, 2011, due to "back problems."  (Tr. 130-33, 155).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 75-129).  On April 12, 2013, Plaintiff appeared before ALJ Janet Alaga-Gadigian with testimony being offered by Plaintiff and a vocational expert.  (Tr. 27-67).  In a written decision dated May 2, 2013, the ALJ determined that Plaintiff was not disabled.  (Tr. 15-22).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 1-5).  Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) degenerative lumbosacral disc disease, old L1 compression fracture, lumbar radiculopathy/left L4/5 synovial cyst with nerve root compression at L4-L5, defects at L5 with spondylolisthesis with impingement of the L5 nerve root; (2) mild lumbar disc herniation; and (3) obesity, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 17).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) he can frequently lift/carry 10-20 pounds; (2) he is limited to unskilled work offering a simple routine (work with an SVP rating of 1 or 2);[2] (3) he requires a sit/stand option; (4) he cannot perform work using foot controls; (5) he cannot crawl or climb ladders, ropes, or scaffolds; (6) he must avoid vibration, exposure to hazardous machinery, and unprotected heights; (7) he can occasionally use his upper extremities to perform pushing/pulling activities; (8) he cannot use his lower extremities to perform pushing/pulling activities; (9) he can occasionally balance, stoop, crouch, kneel, and climb ramps/stairs; (10) he can frequently use his upper extremities to perform overhead reaching; and (11) he can frequently use his hands to perform gross manipulation activities. (Tr. 17-18).

The ALJ found that Plaintiff cannot perform his past relevant work at which point the

---

[2] SVP ratings measure the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *See* Dictionary of Occupational Titles, Appendix C, available at http://www.occupationalinfo.org/appendxc_1.html (last visited on December 10, 2010). A job with an SVP rating of 1 corresponds to a job that a typical worker can perform after a "short demonstration only." A job with an SVP rating of 2 corresponds to a job that a typical worker can perform after "anything beyond short demonstration up to and including 1 month." *Id.*

burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed in the state of Michigan approximately 6,500 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 62-66). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.         **The Treating Physician Doctrine**

On August 28, 2012, Dr. Jeffrey VanWingen completed a form regarding Plaintiff's "physical abilities and limitations for Social Security disability claim." (Tr. 349-50). The ALJ accorded only limited weight to Dr. VanWingen's opinions. (Tr. 19-20). Plaintiff asserts that he

is entitled to relief because the ALJ failed to articulate good reasons for her decision to afford less than controlling weight to the doctor's opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any

7

subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

Dr. VanWingen asserted that Plaintiff can stand for only 30 minutes "at one time" and no more than two hours during an 8-hour workday. (Tr. 349). The doctor reported that Plaintiff can sit for only 15 minutes "at one time" and no more than four hours during an 8-hour workday. (Tr. 349). The doctor reported that Plaintiff can occasionally lift five pounds, but cannot lift any amount of weight on a frequent basis. (Tr. 349). The doctor reported that Plaintiff can frequently raise his right upper extremity "over shoulder level," but can only occasionally raise his left upper extremity

8

"over shoulder level." (Tr. 349). The ALJ discounted Dr. VanWingen's opinion on the ground that it was inconsistent with the medical evidence as well as Plaintiff's reported activities. (Tr. 19).

The medical evidence reveals that while Plaintiff has a severe spinal impairment, such does not limit him to the extent alleged by Dr. VanWingen. A July 26, 2011 MRI of Plaintiff's lumbar spine revealed abnormalities, such as an "old L1 compression fracture" and "mild" disc bulging. (Tr. 256). An August 30, 2011 physical examination revealed the following:

> He changes easily from a sitting to standing position. His gait is mildly antalgic favoring his left leg. He is able to stand on his heels and toes. The patient has moderately decreased flexion and full extension. There is left sided lumbar tenderness. Straight leg raising is negative. Reflexes are intact. Sensation is intact.

(Tr. 270).

Treatment notes dated October 4, 2011, indicate that Plaintiff's pain level was 0-2/10 following a course of physical therapy. (Tr. 249). On October 20, 2011, a nurse working with Dr. VanWingen reported that Plaintiff was no longer able to work in construction, but that he could perform "desk" work that was not "physically strenuous." (Tr. 315).

Treatment notes dated January 3, 2012, indicate that Plaintiff was not a candidate for back surgery. (Tr. 340). The results of a February 29, 2012 examination were unremarkable. (Tr. 317). A March 19, 2013 examination revealed the following:

> There is lumbar tenderness with palpation. There is tenderness at the PSIS on the right side. Tenderness noted at the PSIS on the left side. Range of motion of the right hip is within functional limits. Range of motion of the left hip is within functional limits. There is no lower extremity edema evident.
>
> Muscle strength testing for L2-S1 is 5/5 on the right side. Muscle strength testing for L2-S1 is 5/5 on the left side. Lower extremity sensation is normal.

> Lower extremity reflexes are within functional limits. Straight leg raise exam is negative on the right. Straight leg raise exam is negative on the left. Clonus exam is negative on the right. Clonus exam on the left is negative. Babinski exam is negative on the right. Babinski sign is negative on the left.

(Tr. 364).

A March 29, 2013 physical therapy evaluation concluded that Plaintiff "is a[] good candidate for rehabilitation." (Tr. 374-76).

As for his activities, Plaintiff testified that 3-4 times each week he drives to his "buddy's house" and spends several hours performing "small errands for him." (Tr. 32-33). Plaintiff reported that he went hunting on "two different weekends" the previous fall. (Tr. 36). Plaintiff indicated that he had to drive almost two hours to get to this hunting location. (Tr. 37). Plaintiff reported that he had been fishing, for up to three hours at a time, "maybe a dozen times" so far that year. (Tr. 38-39). Plaintiff indicated that when he goes fishing he spends up to three hours fishing. (Tr. 39). Plaintiff reported that he also goes boating at his family's cabin in northern Michigan. (Tr. 39-40).

Simply put, the medical evidence does not support the contention that Plaintiff suffers from the extreme limitations articulated by Dr. VanWingen. Likewise, Plaintiff's activity level is inconsistent with the doctor's severe limitations. In sum, the ALJ's decision to discount Dr. VanWingen's opinion is supported by substantial evidence. Accordingly, this argument is rejected.

**II.      Plaintiff's Credibility**

Plaintiff next argues that he is entitled to relief because the ALJ improperly discounted his subjective allegations of pain and limitation.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801

(citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

As discussed above, Plaintiff's reported activities are simply inconsistent with the assertion that Plaintiff is limited to an extent greater than recognized by the ALJ's RFC determination. In sum, the ALJ's decision to discount Plaintiff's credibility is legally sound and supported by substantial evidence. Accordingly, this argument is rejected.

**III.         The ALJ Properly Relied on the Testimony of a Vocational Expert**

Finally, Plaintiff argues that the ALJ's finding at Step V of the sequential evaluation process is unsupported by the evidence. While the ALJ may satisfy her burden through the use of hypothetical questions posed to a vocational expert, such questions must accurately portray Plaintiff's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150

(6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed in the state of Michigan approximately 6,500[3] such jobs. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Date: September 21, 2015  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge

---

[3] Plaintiff also argues that the vocational expert identified only 4,000 jobs that Plaintiff could perform consistent with his RFC. The vocational expert clearly identified 6,500 such jobs (4,000 assembly and sorting, 1,500 attendant and security monitor, and 1,000 attendant/cashier). (Tr. 62-66). This argument is, therefore, rejected.